IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW PAUL ROSHONE,

                Plaintiff,

v.

THOMAS JOST et al.,

                Defendants.

2:11-cv-01331-PK

FINDINGS AND
RECOMMENDATION

_____

PAPAK, Magistrate Judge:

      Incarcerated plaintiff Andrew Paul Roshone filed this action *pro se* against Thomas Jost,

Jeff Moura, Alvie Barton, Erik Estrada, Joey Olive, and John Doe on November 1, 2011.  In his

complaint, Roshone alleges that defendants are liable under 42 U.S.C. § 1983 for violating

Roshone's civil rights arising under the Eighth Amendment to the United States Constitution.

Specifically, under Claim I, Roshone alleges that defendants Barton, Estrada, Olive, and John

Doe used excessive force. Under Claim II, Roshone alleges that defendants Jost and Moura were deliberately indifferent to the use of excessive force. Finally, under Claim III, Roshone alleges that medical staff were deliberately indifferent to his medical needs. This court has federal-question jurisdiction over Roshone's federal claims pursuant to 28 U.S.C. § 1331.

Now before the court is defendants' motion for summary judgment and motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (#52).[1] I have considered the motions, supporting declarations and exhibits, and all of the pleadings on file. For the reasons set forth below, defendants' motion to dismiss should be granted and defendants' motion for summary judgment should be denied.

## LEGAL STANDARDS

## I.    Motion for Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to

---

[1] The motion is, in fact, titled a "Motion for Summary Judgment." However, defendants ask the court to dismiss Claim III for failure to exhaust administrative remedies. The proper "form of pretrial motion to be used to resolve [a defendant's] contention that the prisoner has failed to exhaust his administrative remedies . . . [is] an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The distinction is significant. Unlike when deciding a motion for summary judgment, the court may "decide disputed issues of fact" when deciding a motion to dismiss for failure to exhaust administrative remedies. *Id.* at 1119-20. Although defendants erred in their characterization of the motion, Roshone will not be prejudiced if I consider defendants' failure-to-exhaust argument because Roshone had "fair notice of his opportunity to develop a record," *id.* at 1120 n.14, on the issue. On January 22, 2011, I entered an order notifying Roshone that defendants had filed a motion for summary judgment and explaining that he could submit evidence to contradict defendants' evidence. January 22, 2011 Summary Judgment Advice Notice and Scheduling Order, #61, at 1. Roshone, in fact, submitted evidence in opposition to the failure-to-exhaust argument. *See* Amended Declaration of Andrew Paul Roshone ("Roshone Decl."), #77, ¶¶ 30-32; Letter to Inspector General, #77-1, at 1. Thus, because Roshone will suffer no prejudice, I shall consider defendants' motion as both a motion for summary judgment and a motion to dismiss under Rule 12(b).

interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is not proper if material factual issues exist for trial.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).  In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence.  *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## II.    Motion to Dismiss for Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including such actions brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions

of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the available administrative remedies and without regard to the types of remedies available under such administrative grievance procedures. *See id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n.5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To the contrary, an incarcerated plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the burden of the defendant in a prison-conditions lawsuit to raise and prove. *See id.* The courts of the Ninth Circuit treat failure to exhaust administrative remedies "as a matter in abatement, . . . subject to an unenumerated Rule 12(b) motion" to dismiss. *Wyatt*, 315 F.3d at 1119. In deciding an unenumerated Federal Rule of Civil Procedure 12(b) motion to dismiss for failure to exhaust available administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

The PLRA exhaustion requirement is applicable to all persons who are incarcerated at the time they file their civil actions, without regard to whether they may subsequently be released from custody prior to resolution of their claims. *See Cox v. Mayer*, 332 F.3d 422, 424-28 (6th Cir. 2003); *see also Talamantes v. Leyva*, 575 F.3d 1021, 1023-24 (9th Cir. 2009).

//

//

Page 4 - FINDINGS AND RECOMMENDATION

## FACTUAL BACKGROUND

### I.    Parties

Roshone was admitted to the custody of the Oregon Department of Corrections

("ODOC") on January 26, 2010, and was housed at the Snake River Correctional Institution

("SRCI") from February 24, 2010, through November 23, 2012. Decl. of James R. Taylor

("Taylor Decl."), #60, ¶ 3.

Thomas Jost is a Correctional Captain at SRCI. Decl. of Thomas Jost ("Jost Decl."), #55,

¶ 1. Jeff Moura is a Correctional Sergeant at SRCI. Decl. of Jeff Moura ("Moura Decl."), #59,

¶ 1. Alvie Barton, Erik Estrada, and Joey Olive are Correctional Officers at SRCI. Decl. of

Alvie Barton ("Barton Decl."), #57, ¶ 1; Decl. of Erik Estrada ("Estrada Decl."), #58, ¶ 1; Decl.

of Joey Olive ("Olive Decl."), #56, ¶ 1.

### II.    DSU Safety Protocol

SRCI has a Disciplinary Segregation Unit ("DSU"), which houses "dangerous inmates

with a history of aggressive behavior and ODOC rule violations." Decl. of James Eastwood

("Eastwood Decl."), #54, ¶ 7. Because of the population housed in DSU, there are heightened

safety measures in place. *Id.* For instance, when an inmate is escorted in DSU, safety protocols

dictate that there must be two officers present before the inmate's cell door is opened, the inmate

must be placed in wrist restraints, and the "officers must have their hands on the inmate's arms at

all times." *Id.* ¶¶ 8-11. "During an escort through DSU, inmates are told to keep their heads and

eyes straight forward and not to engage with escorting officers." *Id.* ¶ 12. If an inmate turns to

an officer during an escort through DSU, it is considered aggressive behavior because it "gives

the inmate the opportunity to headbutt, kick, or spit on the escorting officers." *Id.* ¶¶ 12-13. If an

inmate exhibits aggressive behavior, officers may use reactive force. *Id.* ¶ 14. If an officer uses

reactive force during an escort, the inmate is taken to DSU's intake center, placed in a wall

restraint, subjected to an unclothed search, and then given new clothes and a medical evaluation.

*Id.* ¶ 15.

### III.    Defendants' Account

On August 11, 2010, Barton and Estrada were assigned to escort Roshone from DSU

Housing Unit B to DSU Housing Unit A. Barton Decl., #57, ¶ 3; Estrada Decl., #58, ¶ 4. As

Barton approached Roshone to begin the escort, Roshone pulled away and lunged at Barton.

Barton Decl., #57, ¶ 4; Estrada Decl., #58, ¶ 5. Barton and Estrada placed "Roshone on the floor

to control his combative behavior." Barton Decl., #57, ¶ 6; Estrada Decl., #58, ¶ 7. After Barton

and Estrada took Roshone to the floor, Roshone continued to resist. Barton Decl., #57, ¶ 7;

Estrada Decl., #58, ¶ 8; Olive Decl., #56, ¶ 4. Olive and Moura responded to the scene after

Roshone was already on the floor. Olive Decl., #56, ¶¶ 4-5; Moura Decl., #59, ¶ 5. Olive

assisted in controlling Roshone by holding Roshone's legs. Olive Decl., #56, ¶ 5. Meanwhile,

Moura retrieved leg restraints from the Special Housing Unit and passed them to Estrada. Moura

Decl., #59, ¶ 6. Roshone continued to resist while Olive and Estrada applied the leg restraints.

*Id.* ¶ 7. After Olive and Estrada applied the leg restraints, Moura and Olive escorted Roshone to

DSU's intake center. Olive Decl., #56, ¶ 6; Moura Decl., #59, ¶ 8.

None of the officers involved saw any injuries on Roshone. Barton Decl., #57, ¶ 9;

Estrada Decl., #58, ¶ 10; Olive Decl., #56, ¶ 7; Moura Decl., #59, ¶ 9. Each of the officers

declared that he did not touch Roshone with the intent to harm or offend him. Barton Decl., #57,

¶ 10; Estrada Decl., #58, ¶ 11; Olive Decl., #56, ¶ 8; Moura Decl., #59, ¶ 10. Jost did not

Page 6 - FINDINGS AND RECOMMENDATION

participate in the escort.  Jost Decl., #55, ¶ 5.

## IV.    Roshone's Account

On August 11, 2010, Roshone was housed in DSU Housing Unit B.  Roshone Decl., #77,

¶ 4.  On that date, Roshone was notified that he was being moved to a different housing unit.  *Id.*

¶ 5.  Roshone was placed in a holding cell to wait for his cell in DSU Housing Unit B to be

cleaned out.  *Id.* ¶ 6; Complaint, #2, at 3.[2]  Estrada came to the holding cell, placed Roshone in

handcuffs, and removed Roshone from the holding cell.  Roshone Decl., #77, ¶ 7; Complaint, #2,

at 3.

While Estrada escorted Roshone to Roshone's new cell, Barton, who was escorting

another inmate, walked by Roshone and Estrada and said, "This works good for me, I just trade

one sex offender for another."  Roshone Decl., #77, ¶¶ 7-8; *accord* Complaint, #2, at 3.  Roshone

continued to walk for a few steps but then stopped.  Roshone Decl., #77, ¶ 9; Complaint, #2, at 3.

At the time, Estrada was not holding onto Roshone, and so Roshone turned around and walked in

the direction Barton was headed.  Roshone Decl., #77, ¶ 10; Complaint, #2, at 3.  After Roshone

began walking away, Estrada grabbed Roshone's arm.  Roshone Decl., #77, ¶ 11.  Roshone then

called Barton's name.  *Id.*; Complaint, #2, at 3.  Barton came out of an office and began quickly

moving toward Roshone while ordering Roshone to go to Roshone's housing unit.  Roshone

---

[2]  Because Roshone declared under penalty of perjury that his complaint was true and
correct, I must "consider as evidence in his opposition to summary judgment all of [his]
contentions offered [in the complaint], where such contentions are based on personal knowledge
and set forth facts that would be admissible in evidence."  *Jones v. Blanas*, 393 F.3d 918, 923
(9th Cir. 2004); *see also Schroeder v. McDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995)
(finding that a *pro se* plaintiff's complaint, which stated that "the facts stated in the . . . complaint
[are] true and correct," was a verified complaint within the meaning of 28 U.S.C. § 1746 and
further finding that a verified complaint may be used as an opposing affidavit under Rule 56 if it
is "based on personal knowledge and set[s] forth specific facts admissible in evidence").

Decl., #77, ¶ 12; Complaint, #2, at 3.  Roshone attempted to move to comply with Barton's directive, but Estrada held Roshone's arm, forcing him to stay in place.  Roshone Decl., #77, ¶13.  When Barton approached Roshone, he grabbed Roshone's arm, swung Roshone around and tried to kick Roshone's legs out from under him.  *Id.* ¶ 14; Complaint, #2, at 3.  Barton failed on his first attempt but successfully forced Roshone to the ground on the second.  Roshone Decl., #77, ¶ 15.  Roshone landed on the side of his forehead and was rendered unconscious for "a short period."  *Id.*  When Roshone regained consciousness, Barton, Olive, Estrada, and an officer identified only as "Mauney" were punching, "knee[ing]," and kicking Roshone's head and face.  *Id.* ¶ 16.  Meanwhile, Moura, Jost, and others, including an officer identified only as "Arnold," watched as their fellow officers beat Roshone.  *Id.* ¶ 16; Complaint, #2, at 4.  At some point, the officers applied leg restraints, but they continued physically assaulting Roshone.  Roshone Decl., #77, ¶ 17; Complaint, #2, at 4.

"After an unknown time," the officers lifted Roshone off the ground and carried him to DSU's intake center, where he was placed in a wall restraint.  Roshone Decl., #77, ¶¶ 18-19.  When a nurse arrived, Roshone was "still disoriented and shaking."  *Id.* ¶ 20.  The nurse inquired if Roshone "was hurting anywhere," to which Roshone responded that he "did not."  *Id.* ¶ 21.  Roshone was then removed from the wall restraint and taken to his new cell.  *Id.* ¶ 22.

Following the incident, Roshone "started to feel severe pain in [his] head and face where [he] had minor cuts and larger swellings, and in [his] lower back."  *Id.* ¶ 23.  On August 12, 2010, Roshone signed up for "sick call."  *Id.* ¶ 24 (internal quotation marks omitted).  Although Roshone saw a nurse, the nurse "stormed off" before Roshone could describe his symptoms.  *Id.* ¶ 25.  Thereafter, Roshone wrote a prisoner communication (a "kyte") to a doctor; however, the

kyte was never returned. *Id.* ¶ 26. Approximately two weeks after the August 11, 2010 incident,

Roshone again signed up for "sick call" and, while he saw a different nurse and was able to

describe his symptoms to the nurse, he still never saw a doctor. *Id.* ¶¶ 27-28. Roshone continued

to experience back pain for six months following the August 11, 2010 incident. *Id.* ¶ 23.

    Meanwhile, shortly after the incident, Barton filed a Misconduct Report, in which Barton

stated that Roshone lunged at Barton and exhibited combative behavior during the escort.

Misconduct Report, #2-1, at 1. On August 13, 2010, Roshone filed a grievance alleging Barton

used excessive force during the incident. Grievance Report, #2-1, at 6. On August 18, 2010,

there was a hearing on the Misconduct Report. Disciplinary Hearing, #2-1, at 2. The hearing

officer determined that Roshone violated an ODOC rule by assaulting Olive during the August

11, 2010 incident. *Id.* On August 25, 2010, the Grievance Coordinator returned Roshone's

grievance because "use of force [and] misconduct reports are not grievable." Inmate Complaint

Receipt Memo, #2-1, at 5. On July 14, 2011, Roshone appealed the Grievance Coordinator's

decision, stating that "in order to file a lawsuit [inmates] have to exhaust the grievance system."

Grievance Appeal Form, #2-1, at 9. The Grievance Coordinator returned the appeal and noted

that Roshone could "use this rejection to demonstrate [he] tried to use the grievance process."

Inmate Complaint Receipt Memo, #2-1, at 8. On October 13, 2011, Roshone appealed the

Grievance Coordinator's decision. Grievance Appeal Form, #2-1, at 11. On that same date,

Roshone filed a grievance related to the "denial of medical treatment" following the August 11,

2010 incident. Roshone Decl., #77, ¶ 30. The Grievance Coordinator returned the appeal, noting

that use of force is not a grievable issue. Inmate Complaint Receipt Memo, #2-1, at 10.

Roshone's grievance relating to his medical claim was never returned. Roshone Decl., #77, ¶ 31.

On November 1, 2011, Roshone initiated the instant action under 42 U.S.C. § 1983. On November 27, 2011, Roshone wrote a letter to the Inspector General, in which Roshone requested that the Inspector General "look into [Roshone's] unreturned grievance" relating to his medical claim. Roshone Decl., #77, ¶ 32; Letter to Inspector General, #77-1, at 1.

## ANALYSIS

I shall begin by addressing defendants' motion to dismiss Claim III for failure to exhaust administrative remedies before turning to consider defendants' motion for summary judgment.

### I.  Failure to Exhaust Administrative Remedies as to Claim III

#### A.  Parties' Arguments

Defendants move to dismiss Claim III, which alleges medical staff were deliberately indifferent to Roshone's medical needs, on the ground that Roshone failed to exhaust his administrative remedies, as required by the PLRA. Defendants argue that ODOC records indicate Roshone filed eleven[3] grievances between August 2010 and December 2011, none of which claimed that he received inadequate medical care following the August 11, 2010 incident. Because Roshone failed to comply with the PLRA's administrative-exhaustion requirement, defendants ask the court to "dismiss [Roshone's] Eighth Amendment medical claim for failure to exhaust." Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Br."), #53, at 13.

In his declaration, Roshone alleges that, on October 13, 2011, he filed a grievance for denial of medical treatment. Roshone Decl., #77, ¶ 30. Roshone further alleges that such grievance "was never responded to or returned." *Id.* ¶ 31. On November 27, 2011, Roshone alleges that he wrote

---

[3] There were, in fact, twelve grievances, although two relate to the same incident. *See* Taylor Decl., #60 (attaching records of Roshone's grievances).

a letter to the Inspector General, requesting that the Inspector General "look into [Roshone's] unreturned grievance." *Id.* ¶ 32; *see* Letter to Inspector General, #77-1, at 1.

In their reply, defendants maintain that Roshone failed to exhaust his administrative remedies. Defendants note that Roshone "does not submit a copy of the grievance that he allegedly filed, nor does [he] explain why he didn't submit another grievance or follow up directly with the grievance coordinator at SRCI regarding the status of his allegedly unreturned grievance." Defendants' Reply, #71, at 7-8. Defendants further note that, even if Roshone in fact sent the November 27, 2011 letter to the Inspector General regarding his grievance, as he alleges in his declaration, Roshone "filed his lawsuit on November 7, 2011—twenty days before that letter was ever sent."[4] *Id.* at 8.

## B.    Discussion

As noted above, under the PLRA, an incarcerated plaintiff must exhaust all available administrative remedies within the institution in which he or she is housed before filing a federal action in connection with prison conditions, including an action brought under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *see also Wyatt*, 315 F.3d at 1116-20 (discussing the PLRA's administrative-exhaustion requirement). Under the PLRA, courts lack the discretion to consider claims unless the prisoner first exhausted his or her administrative remedies, even if the remedy the prisoner seeks in federal court, such as money damages, is not available in the administrative proceeding. *See Porter*, 534 U.S. at 524, *citing Booth*, 532 U.S. at 739, 740 n.5, 741. For purposes of the PLRA, exhaustion of available administrative remedies requires that an inmate "complete the

---

[4] Roshone's complaint was, in fact, filed on November 1, 2011. *See Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (finding that the mailbox rule applies to 42 U.S.C. § 1983 suits filed by *pro se* prisoners).

administrative review process in accordance with [all] applicable procedural rules, including
deadlines." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548
U.S. 81, 88 (2006) (internal quotation mark omitted).

    After reviewing the record, I find that Roshone failed to exhaust his administrative remedies
with regard to Claim III. In support of the motion, defendants submitted a declaration from James
A. Taylor, one of the custodians of ODOC records. Taylor Decl., #60, ¶ 1. Taylor declared that,
after "a thorough search of [his] records," he found twelve grievances Roshone submitted between
February 24, 2010, and December 27, 2011. *Id.* ¶ 12. None of the twelve grievances, which Taylor
attached in support of his declaration, complain that Roshone did not receive adequate medical care
following the August 11, 2010 incident. I am unpersuaded by Roshone's bald assertion that he filed
a grievance on October 13, 2011, and that the Grievance Coordinator did not respond. Roshone's
letter to the Inspector General, written after the instant lawsuit was initiated, is likewise
unpersuasive. Roshone did not submit a copy of the grievance he claim he filed, he offers no
explanation for why he did not file another grievance if his first grievance was unreturned, and he
offers no explanation for why he wrote to the Inspector General rather than attempting to follow-up
within the institution. Thus, I find that Roshone failed to exhaust his administrative remedies with
regard to Claim III. *See Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010) (finding that the district
court did not err in dismissing a 42 U.S.C. § 1983 action where the plaintiff argued that he exhausted
his administrative remedies but there was no record of the plaintiff filing any grievance).

    Even if I were to find that Roshone filed a grievance regarding inadequate medical treatment,
Roshone alleges that he did not file such grievance until October 13, 2011—well over a year after
the August 11, 2010 incident and well over six months after he allegedly stopped experiencing lower

back pain. *See* Roshone Decl., #77, ¶ 23 (stating that he experienced back pain for six months following the August 11, 2010 incident). Oregon Administrative Rule 291-109-0150 establishes a deadline by which prisoners must file grievances; specifically, the rule requires the grievance coordinator to receive a grievance "within [thirty] calendar days of the date of the incident giving rise to the grievance." Or. Admin. R. 291-109-0150(2) (2010). Although it is not entirely clearly from Roshone's complaint, it appears Roshone bases his deliberate-indifference claim on the facts that he signed up for "sick call" on two separate occasions—once on August 12, 2010, and on another occasion approximately two weeks later—and attempted to communicate with a doctor via a kyte sometime shortly after August 12, 2010, but never received adequate medical care. *See* Roshone Decl., #77, ¶¶ 24-28. If Roshone filed his grievance on October 13, 2011, as he alleges, he would have filed such grievance well outside the time period prescribed in Rule 291-109-0150. Because Roshone's grievance was untimely, if filed at all, Roshone failed to exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines . . . .").

In light of the foregoing, Claim III should be dismissed without prejudice for failure to exhaust administrative remedies. *See Wyatt*, 315 F.3d at 1120 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

## II.   Summary Judgment

Defendants move for summary judgment on Claims I and II on the grounds that there is no genuine issue of material fact as to whether defendants used excessive force and, alternatively, that they are entitled to qualified immunity. Defendants also move for summary judgment on Claim III

on the ground that Roshone failed to name a defendant who was deliberately indifferent to his medical needs.

**A.**    **Claims I and II**

**1.    Parties' Arguments**

Defendants move for summary judgment on Claim I, which alleges the use of excessive force, and Claim II, which alleges deliberate indifference to the use of excessive force, on the grounds that: (1) there is no genuine issue of material fact as to whether defendants used excessive force; and, in the alternative, (2) defendants are entitled to qualified immunity. First, defendants argue that they are entitled to summary judgment on the excessive-force and deliberate-indifference claims because they used "the minimum amount of force necessary to maintain control of" Roshone. Defendants' Br., #53, at 8. Defendants further contend that they are entitled to summary judgment on Claims I and II on the independent basis that Roshone fails to allege more than a *de minimus* injury. Specifically, defendants point to the fact that Roshone reported that he was not hurt immediately following the incident, and Roshone's alleged minor cuts, swelling, and back pain do not rise to the level of injury required for an Eighth Amendment violation.

Second, defendants argue that they are qualifiedly immune from suit because they did not violate a clearly established constitutional right. Consistent with their argument that they used only reasonable force under the circumstances, defendants contend that there was no constitutional violation and, even if there were a constitutional violation, the right was not clearly established because a "reasonable corrections officer would not have been aware that using reactive force to restrain an inmate who had lunged at an officer during a prison escort in order to

subdue the uncooperative inmate would constitute excessive force." *Id.* at 11. Thus, defendants

maintain that they are entitled to qualified immunity.

In response, Roshone argues that summary judgment is not appropriate as to Claims I and

II because there are disputed issues of material fact; specifically, Roshone notes that the parties'

respective declarations "are squarely contradictory as to what force was used, and why it was

used." Roshone's Resistance, #69, at 3. Roshone argues that defendants employed force when

none was necessary, which "is in itself evidence that . . . [d]efendants were acting maliciously

and sadistically to cause harm." *Id., citing Miller v. Leathers*, 913 F.2d 1085, 1088 (4th Cir.

1990) (internal quotation marks omitted). Thus, Roshone argues that defendants are not entitled

to summary judgment on Claims I and II.

In their reply, defendants contend that, even under Roshone's version of the facts,

defendants are entitled to judgment as a matter of law on Claims I and II. First, defendants argue

that Roshone has failed to demonstrate that there is a genuine issue of material fact precluding

summary judgment in favor of defendants. Specifically, defendants argue that Roshone's

declaration only references force Barton used and, consequently, the remaining defendants are

entitled to summary judgment because there is no genuine issue of material fact as to the force

they applied. Second, defendants contend that, under Roshone's version of the facts, Roshone

"violated the DSU security protocols by engaging with an officer, approaching an officer, and

even walking unrestrained through a DSU corridor." Defendants' Reply, #71, at 4. Thus,

defendants argue that Barton's use of force under the circumstances was reasonable and "applied

to restore order to the institution." *Id.* at 5. Moreover, defendants again assert that, because

Roshone suffered only a *de minimus* injury, his claims fail. Second, defendants note that

Page 15 - FINDINGS AND RECOMMENDATION

Roshone did not address any of defendants' arguments related to qualified immunity.

On June 12, 2013, Roshone filed an amended declaration that supplemented his original declaration as follows:

> As I came to, my head and face were punched, kneed and kicked by C/O's Barton[,] Olive[,] Estrada, Mauney (one John Doe), while Sgt Moura and C/O Arnold (another John Doe) watched me being [gratuitously] beaten, for no reason.
>
> . . . .
>
> A while later, I started to feel severe pain in my head and face where I had minor cuts and larger swellings, and in my lower back, which lasted 6 months.

Roshone Decl., #77, ¶¶ 16, 23.  Defendants filed a sur-reply to address Roshone's amended declaration.  In their sur-reply, defendants maintain that they are still entitled to summary judgment.  First, defendants argue that the "Doe" defendants are not properly before the court because Roshone's declaration does not identify them with sufficient detail and, moreover, Roshone cannot add any "Doe" defendants because of the applicable two-year statute of limitations.  Second, defendants argue that, even with Roshone's added detail regarding the extent of the alleged injuries he suffered, Roshone's injuries are still *de minimus* and, consequently, defendants are entitled to summary judgment on Claims I and II.

### 2.    John Doe Defendant

As an initial matter, I agree with defendants that the John Doe defendant is not properly before the court.  Discovery is closed and Roshone never moved to amend his complaint to identify John Doe.  If Roshone were to file such a motion now, it would be denied as futile because it is outside the limitations period.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007)

Page 16 - FINDINGS AND RECOMMENDATION

(noting that the state statute of limitations for personal-injury torts applies in a 42 U.S.C. § 1983

action); *see also* Or. Rev. Stat. § 12.110 (setting forth a two-year statute of limitations for

personal-injury actions). Accordingly, the claims against John Doe should be dismissed with

prejudice.

### 3.   Genuine Issue of Material Fact

#### a.   Claim I

Under Claim I, Roshone alleges Barton, Estrada, and Olive are liable under 42 U.S.C.

§ 1983 for using excessive force. "[T]he unnecessary and wanton infliction of pain . . .

constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v.*

*McMillian*, 503 U.S. 1, 5 (1992), *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986) (second

alteration in original) (internal quotation marks omitted). "[T]he question whether the measure

taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

the very purpose of causing harm." *Id.*, *quoting Whitley*, 475 U.S. at 320-21 (internal quotation

marks omitted).  In determining whether this standard is satisfied, courts examine the five factors

set forth in *Hudson*:

> "(1) the extent of injury suffered by an inmate; (2) the need for
> application of force; (3) the relationship between that need and the
> amount of force used; (4) the threat reasonably perceived by the
> responsible officials; and (5) any efforts made to temper the
> severity of a forceful response."

*Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013), *quoting Martinez v. Stanford*, 323 F.3d

1178, 1184 (9th Cir. 2003).

Applying the *Hudson* factors, I find that summary judgment is not appropriate on Claim I.

Under the first factor, defendants dispute that Roshone suffered injuries from the incident, while Roshone alleges that he lost consciousness for a period of time, suffered cuts and swelling on his head and face, and experienced back pain that lasted six months. Roshone further alleges that his injuries were severe enough that they "limited [his] abilities to move around, eat, and maintain proper [hygiene]." Complaint, #2, at 5. Defendants suggest that, even if Roshone suffered such injuries, they are *de minimus* and fall outside the scope of the Eighth Amendment's protections. However, it is well-settled that, in the context of an Eighth Amendment excessive-force case, the extent of the injuries alone is not dispositive. *Hudson*, 503 U.S. at 7 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."); *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (noting that, in the context of an Eighth Amendment excessive-force claim, the relevant inquiry is whether there was a *de minimus* use of force, rather than injury).

There are likewise disputed issues of material fact relevant to the second, third, and fourth *Hudson* factors. Defendants allege Roshone lunged at Barton and continued to resist after Barton and Estrada successfully took Roshone to the floor. Under Roshone's account, defendants punched, kicked, and kneed him despite the fact that he lost consciousness. Defendants suggest that, even under Roshone's version of the facts, the use of force was necessary. It is an undisputed fact that DSU houses inmates with a history of violating ODOC rules, including inmates that have a history of assault. Moreover, it is undisputed that, under the heightened security measures in place in DSU, a prisoner in escort is instructed to keep his or her eyes and head straight forward and not engage with escorting officers. While it is not altogether clear whether Roshone was given such an instruction in this case or whether Roshone was otherwise

aware of such a rule, his conduct in turning around during an escort in DSU and walking away

from his escorting officer may be sufficient to justify the use of some force. However, even if

the initial use of force was justified, there was not a continued need for the use of force after

Roshone lost consciousness.

Finally, under the fifth *Hudson* factor, I find that defendants made an effort to temper the

severity of their forceful response. It is undisputed that Olive and Moura escorted Roshone to

DSU's intake center where Roshone received a medical evaluation. This factor alone, however,

does not sway the analysis.

In light of the foregoing, I find that there are genuine issues of material facts as to Claim

I. Specifically, the parties are in sharp disagreement as to whether there was a need to apply

force, the amount of force used, and the extent of Roshone's injuries.

### b. Claim II

Under Claim II, Roshone alleges Jost and Moura are liable under 42 U.S.C. § 1983 for

failing to intervene during the August 11, 2010 incident. An officer may be liable under 42

U.S.C. § 1983 if he or she is aware that a fellow officer is violating a prisoner's constitutional

right but fails to intervene. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)

("'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional

rights of a suspect or other citizen.'" (citation omitted)); *Robins v. Meecham*, 60 F.3d 1436, 1442

(9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing

to intervene."); *see also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (recognizing a

failure-to-intervene theory of liability); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d

203, 207 n.3 (1st Cir. 1990) ("An officer who is present at the scene and who fails to take

reasonable steps to protect the victim of another officer's use of excessive force can be held liable

under section 1983 for his nonfeasance."). An officer is subject to liability under a failure-to-

intervene theory, however, only if the officer had an opportunity to prevent the harm. *Harper*,

400 F.3d at 1064; *Cunningham*, 229 F.3d at 1289-90.

In this case, I find summary judgment is not appropriate on Claim II. First, as to

defendant Jost, there is a factual dispute as to whether he witnessed the August 11, 2010 incident.

Jost alleges he did not participate in the escort. Jost Decl., #55, ¶ 5. Roshone, on the other hand,

contends Jost was "present and watched as . . . Barton, Estrada, Olive and John Doe maliciously

and sadistically used force against" Roshone. Complaint, #2, at 4. Second, as to both Jost and

Moura, there are genuine issues of material fact as to whether the underlying constitutional

violation—that is, the use of excessive force—occurred. If it did, Roshone's account of the

incident, particularly his allegation that the beating continued for some time, suggests that Jost

and Moura had an opportunity to intervene. Thus, I find that there are genuine issues of material

fact as to Claim II.

### 4.    Qualified Immunity

Defendants contend that, even if the court finds there are genuine issues of material fact

as to Claims I and II, summary judgment in defendants' favor is nevertheless appropriate on the

basis of qualified immunity. "Government officials who perform discretionary functions

generally are entitled to qualified immunity from liability for civil damages 'insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir.

2003), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two inquiries relevant

to the qualified-immunity analysis at the summary-judgment stage. *Saucier v. Katz*, 533 U.S.
194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The
first inquiry is whether the facts, viewed in the light most favorable to the nonmoving party,
demonstrate that the government official violated a constitutional right. *Wilkie v. Robbins*, 551
U.S. 537, 583 (2007) (Thomas, J., concurring), *quoting Saucier*, 533 U.S. at 201. The second
inquiry is whether that constitutional right was clearly established. *Id*. The courts may consider
these questions in whichever order is more appropriate under the circumstances of the case. *See
Pearson*, 555 U.S. at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official
would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 132 S.
Ct. 2088, 2093 (2012), *quoting Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (alteration in
original) (internal quotation marks omitted); *see also Saucier*, 533 U.S. at 202 ("The relevant,
dispositive inquiry in determining whether a right is clearly established is whether it would be
clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").
"[T]he right allegedly violated must be established, not as a broad general proposition, but in a
particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*,
132 S. Ct. at 2094 (citations omitted) (internal quotation marks omitted).

Here, as discussed in detail above, I find that, after resolving all factual disputes in
Roshone's favor, Barton, Estrada, and Olive violated Roshone's Eighth Amendment right to be
free from cruel and unusual punishment by using excessive force. I also find that such right was
clearly established. At the time of the August 11, 2010 incident, it was well-settled that the
Eighth Amendment prohibits prison officials from wantonly beating an inmate who is not

resisting. *See Hudson*, 503 U.S. at 6 (noting that, in determining whether a prison official used

excessive force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Martinez*, 323

F.3d at 1180, 1183-84 (finding that prison officials were not entitled to qualified immunity where

the inmate alleged that the officials, among other things, "beat him with their fists and a wooden

baton on his head, torso, and legs" and continued to beat him after they had handcuffed him). As

discussed above, the initial use of force to subdue Roshone may have been warranted; however,

no reasonable corrections officer could have believed that the continued use of force after

Roshone lost consciousness, including the punching, kicking, and kneeing of Roshone's face and

head, was constitutionally permissible.

Moreover, with regard to Claim II, I find that, after resolving all factual disputes in

Roshone's favor, Jost and Moura violated Roshone's Eighth Amendment right to be free from

cruel and unusual punishment by failing to intervene when Barton, Estrada, and Olive used

excessive force. I also find that such right was clearly established. It was well-established as of

August 11, 2010, that an officer has a duty to intervene when a fellow officer uses excessive

force. *See, e.g.*, *Cunningham*, 229 F.3d at 1289-90; *see also Farmer v. Brennan*, 511 U.S. 825,

833 (1994) (finding that prison officials have a duty to protect a prisoner from harm at the hands

of other prisoners).

Consequently, at this stage in the proceedings, I find that, in construing the evidence in

the light most favorable to Roshone, defendants violated Roshone's Eighth Amendment right and

such right was clearly established. Thus, defendants are not entitled to qualified immunity. I

therefore recommend that the motion be denied to the extent it requests summary judgment on

qualified-immunity grounds. *See Serrano*, 345 F.3d at 1077 ("If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial.").

### B.    Claim III

Defendants argue that they are entitled to summary judgment on Claim III on the ground that Roshone "has failed to name any defendant that personally engaged in actions that deprived him of his federally protected rights." Defendants' Br., #53, at 13. Moreover, defendants argue that Roshone cannot cure this defect because, as they previously argued, he failed to exhaust his administrative remedies with regard to his medical-care claim. Roshone did not respond to this argument in his resistance, as defendants note in their reply.

In light of my above finding that Roshone did not exhaust his administrative remedies, I find it unnecessary to address this argument.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment and motion to dismiss under Rule 12(b) (#52) should be granted in part and denied in part. The John Doe defendant should be dismissed with prejudice and Claim III of the complaint should be dismissed without prejudice. Claims I and II should remain.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 3rd day of September, 2013.

Honorable Paul Papak
United States Magistrate Judge